IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RYAN PATTERSON, | ) | CASE NO. 1:11-CV-208 |
| Plaintiff, | ) | |
| v. | ) | MAGISTRATE JUDGE McHARGH |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) | **MEMORANDUM OPINION & ORDER** |
| Defendant. | ) | |

This case is before the undersigned pursuant to the consent of the parties. (Doc. 13). The issue before the undersigned is whether the final decision of the Commissioner of Social Security (the "Commissioner"), denying Plaintiff Ryan Paterson's applications for a Period of Disability and Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, and Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C § 1381 *et seq.*, is supported by substantial evidence and therefore, conclusive.

For the reasons set forth below, the Court VACATES the decision of the Commissioner and REMANDS the case back to the Social Security Administration.

I. INTRODUCTION & PROCEDURAL HISTORY

On March 26, 2008, Plaintiff Ryan Patterson ("Plaintiff" or "Patterson") filed applications for Disability Insurance benefits and Supplemental Security Income benefits, alleging that he became disabled on March 24, 2008. (Tr. 81-92). Plaintiff's applications were denied initially on April 23, 2008, and also on reconsideration on August 19, 2008. (Tr. 46-51, 55-62). Thereafter, Patterson requested a hearing before an administrative law judge to contest

the denial of his applications. (Tr. 63-64). The Social Security Administration granted Plaintiff's request and scheduled a hearing. (Tr. 65-66).

On September 23, 2009, Administrative Law Judge O. Price Dodson (the "ALJ" or "ALJ Dodson") convened a hearing via video to evaluate Plaintiff's applications. (Tr. 20-41). The ALJ presided over the hearing from Norfolk, Virginia, and Plaintiff, along with his attorney, appeared in Erie, Pennsylvania. (Tr. 12, 20-22). Vocational expert, Mr. Robert Edwards (the "VE"), also appeared and testified at the hearing. (Tr. 40-41). On October 26, 2009, ALJ Dodson issued his decision and determined that Patterson was not disabled. (Tr. 12-19). In his written decision, ALJ Dodson applied the five-step sequential analysis[1] and concluded that Plaintiff retained the ability to perform work which existed in significant numbers in the national

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability". *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1)     If a claimant is doing substantial gainful activity – i.e., working for profit – she is not disabled.

(2)     If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3)     If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4)     If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5)     Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

economy and, was thus not disabled. (*Id.*) Following this ruling, Plaintiff sought review of the ALJ's decision from the Appeals Council. (Tr. 6-7). But, the council denied Patterson's request, thereby making the ALJ's decision the final decision of the Commissioner. (Tr. 1-5). Patterson now seeks to appeal the Commissioner's final ruling. Judicial review is proper pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

Patterson, born on July 11, 1978, was 29 years old on his alleged onset date and 31 years old at the time of his hearing before ALJ Dodson. (Tr. 18, 23). Accordingly, at all relevant times, Patterson was considered a "younger person" for Social Security purposes. *See* 20 C.F.R. §§ 404.1563(c), 416.963(c). Patterson has a high school education. (Tr. 23). He also has prior experience working as a newspaper delivery driver, press operator, sasheer operator, forklift driver and dishwasher/kitchen helper. (Tr. 25-27, 40).

## II. ALJ's RULING

ALJ Dodson made the following relevant findings of fact and conclusions of law. At step one of the five-step sequential analysis, ALJ Dodson found that Patterson had not engaged in substantial gainful activity since March 24, 2008, Plaintiff's alleged onset date. (Tr. 14). Next, at the second step, the ALJ held that Plaintiff suffered from one severe impairment: fibromyalgia. (*Id.*) At step three, ALJ Dodson ruled that Patterson's fibromyalgia did not meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) Before moving to step four, ALJ Dodson assessed Patterson's residual functional capacity ("RFC") to work. (Tr. 15-18). He determined that Patterson retained the ability to perform the full range of sedentary work. (*Id.*) Because ALJ Dodson restricted Plaintiff to this type of work, he concluded that Patterson was unable to return to any of his prior work because those positions required greater exertional skills than that which Plaintiff possessed. (Tr. 18). But, at the final

step in the analysis, the ALJ found that there was other work, existing in significant numbers in the national economy, which Patterson could successfully perform. (Tr. 18-19).

## III. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when he establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when he cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20 C.F.R. §§ 404.1505, 416.905.

## IV. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). This Court may not try the case de novo, resolve conflicts in the evidence, or decide

questions of credibility. See Garner, 745 F.2d at 387. However, it may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. See Walker v. Sec'y of Health & Human Servs., 884 F.2d 241, 245 (6th Cir. 1989).

## V. ANALYSIS

Patterson challenges the ALJ's decision on three grounds. First, he alleges that ALJ Dodson failed to properly assess his credibility in light of his diagnosis of fibromyalgia. Second, Plaintiff submits that the ALJ violated the treating physician rule by failing to supply adequate reasons for the weight assigned to Plaintiff's treating physician's opinion. Finally, Patterson argues that it was error for the ALJ to apply the Medical-Vocational guidelines at step five of the sequential analysis. After reviewing Plaintiff's objections, the Court finds that the ALJ's decision is not supported by substantial evidence, and remand is appropriate.

### 1. Treating Physician's Opinion

Plaintiff contends that the ALJ failed to properly evaluate the findings offered by his treating rheumatologist, Dr. David Mandel. The key opinion at issue is the Physical RFC Questionnaire which Dr. Mandel completed on September 10, 2008. (Tr. 161-64). In the questionnaire, Dr. Mandel noted Plaintiff's diagnosis of fibromyalgia and symptoms of paracervical pain, low back pain, insomnia and drowsiness. (Tr. 161). Although Dr. Mandel opined that Patterson could tolerate low stress jobs, he also indicated that Plaintiff's pain or other symptoms would frequently[2] interfere with the "attention and concentration needed to perform even simple work tasks". (Tr. 162). The doctor further concluded that Plaintiff's impairments were reasonably consistent with his symptoms and functional limitations. (Id.)

---

[2] The questionnaire defined "frequently" as "34% to 66% of an 8-hour working day." (Tr. 162).

5

With respect to Plaintiff's functional abilities, Dr. Mandel found that Patterson retained the ability to walk one to two city blocks without rest or pain, and that in an 8-hour work day, Plaintiff would need to walk for at least five minutes every 90 minutes. (Tr. 162-63). Dr. Mandel also evaluated Plaintiff's capacity to sit and stand throughout an 8-hour work day. Dr. Mandel concluded that in a full working day, Patterson could sit for at least six hours, but stand and/or walk for no more two hours total. (Tr. 163). Furthermore, he noted that Plaintiff would need to take 10-minute breaks every two to three hours. (*Id.*) In regards to lifting, Dr. Mandel found that Plaintiff could never lift or carry more than 20 pounds, but could lift less than 10 pounds occasionally and 10 pounds rarely.[3] (*Id.*) He also noted that Plaintiff could frequently hold his head in a static position, occasionally look up or down, but only rarely turn his head right or left, twist, stoop, crouch, or climb stairs or ladders. (Tr. 163-64). Lastly, the doctor estimated that Plaintiff's impairments would cause him to be absent from work approximately three days each month. (Tr. 164).

ALJ Dodson acknowledged these findings within his written decision, but stated that he only attributed "some weight" to Dr. Mandel's opinions. (Tr. 17). In partly discrediting Dr. Mandel's assessment, ALJ Dodson stated, "there is no significant evidence of neurological compromise which would limit the claimant's to [sic] function to the degree Dr. Mandel suggests[, and] [h]is opinion is not entirely supported by reports which indicate only routine outpatient care." (Tr. 17-18). Patterson submits that the ALJ's proffered reasons are not adequate to justify his treatment of Dr. Mandel's opinions. Plaintiff also argues that while the ALJ stated that he gave "some weight" to Dr. Mandel's opinion, in reality, the ALJ completely rejected the doctor's findings.

---

[3] The questionnaire defined "occasionally" as "6% to 33% of an 8-hour working day" and "rarely" as "1% to 5%" of the working day. (Tr. 162).

Fibromyalgia is an elusive and mysterious disease which produces no objectively alarming signs. *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 990 (N.D. Ohio 2003). The disease has no known cause or cure and there are no clinical or laboratory tests to determine its existence or severity. *Id.* It is characterized by "severe musculoskeletal pain, stiffness, fatigue, and multiple acute tender spots at various fixed locations on the body." *Id.* To properly diagnose the condition, the patient must first be tested for tenderness at specific focal points and then other possible conditions or causes of the pain must be ruled out through objective medical testing. *Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 861 (6th Cir. 2011) (*citing Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 820 (6th Cir. 1988)). Because neither the diagnoses nor severity of this illness can be determined solely through objective evidence, medical opinions based exclusively upon objective medical findings are not helpful in assessing the severity of a claimant's condition. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 245 (6th Cir. 2007) (*citing Preston*, 854 F.2d at 820). For example, ironically, "fibromyalgia patients can 'manifest normal muscle strength and neurological reactions and have a full range of motion'", despite suffering from this condition. *Rogers*, 486 F.3d at 244 (*quoting Preston*, 854 F.2d at 820),.

When assessing the medical evidence contained within a claimant's file, it is well-established that the ALJ must give special attention to the findings of the claimant's treating source. *Wilson v. Comm'r of Soc. Sec.* 378 F.3d 541, 544 (6th Cir. 2004). This doctrine, known as the "treating source rule", recognizes that physicians who have a long-standing treating relationship with an individual are better equipped to provide a complete picture of the individual's health and treatment history. *Id.*; 20 C.F.R. §§ 416.927(d)(2), 404.1527(d)(2). A treating source's opinion will receive controlling weight if the opinion is (1) well supported by

medically acceptable data and (2) not inconsistent with the other substantial evidence in the record. 20 C.F.R. §§ 416.927(d)(2), 404.1527(d)(2). However, it is "error to give an opinion controlling weight simply because it is the opinion of a treating source." SSR 96-2p, 1996 WL 374188, at *2. Yet, if the ALJ determines that the treating physician's opinion does not deserve controlling weight, the ALJ must provide "good reasons" for the weight actually attributed to the doctor's opinion. 20 C.F.R. §§ 416.927(d)(2), 404.1527(d)(2). The good reasons requirement ensures that the ALJ applies the treating physician rule and facilitates meaningful review of the ALJ's application of the regulation. Rogers, 486 F.3d at 242-43.

In the instant case, ALJ Dodson did not supply adequate reasons for discounting Dr. Mandel's opinions. In cases where a claimant's alleged disability centers upon his or her fibromyalgia, the Sixth Circuit has expressly rejected attempts to discredit medical opinion evidence based on the lack of objective evidence supporting the claimant's complaints of disabling pain. See Preston, 854 F.2d at 820; Rogers, 486 F.3d at 243; Kalmbach, 409 F. App'x at 859-62. ALJ Dodson partly discredited Dr. Mandel's opinion because he concluded that there was "no significant evidence of neurological compromise" to support Dr. Mandel's findings. (Tr. 17). This is exactly the type of reasoning that our circuit has found unacceptable in fibromyalgia cases. Preston, 854 F.2d at 820 (finding reversible error where an ALJ rejected the opinions of the claimant's treating physician regarding her fibromyalgia due to the lack of objective evidence confirming the claimant's degree of pain); Kalmbach, 409 F. App'x 852 at 861-62 ("[T]he ALJ's rejection of the treating physicians' opinions as unsupported by objective evidence in the record obviously stems from his fundamental misunderstanding of the nature of fibromyalgia."). Neurological functioning test results are not reliable indicators of the severity of a claimant's fibromyalgia and do not undermine a claimant's subjective statements regarding

his or her pain. *Rogers, 486 F.3d at 244*. ALJ Dodson erred by discounting Dr. Mandel's opinion on this basis.

Likewise, our circuit has found that it is also improper for an ALJ to discount credibility based upon the claimant's failure to seek more aggressive treatment. In *Kalmbach*, the court remanded a case back to the Social Security Administration after finding, *inter alia*, that the ALJ had erroneously discredited the claimant's credibility based upon her lack of aggressive treatment because "more 'aggressive' treatment is not recommended for fibromyalgia patients." 409 F. App'x at 864; *see also Miracle v. Astrue*, No. 11-163-DLB, 2012 WL 137867, at *5 (E.D.Ky. Jan. 18, 2012). ALJ Dodson's decision to undermine Dr. Mandel's findings due to the fact that Plaintiff only received routine outpatient care comes suspiciously close to the ALJ rendering an improper medical judgment. Because aggressive treatment is not recommended for treating fibromyalgia patients, the ALJ's statement criticizing the routine nature of Plaintiff's treatment appears to be a critique based solely upon ALJ Dodson's view of the type of treatment *he* believed Patterson should have underwent given the restrictions announced by Dr. Mandel. But, an ALJ must be careful not to substitute his own judgment for that of the claimant's treating physician. *Meece v. Barnhart*, 192 F. App'x 456, 465 (6th Cir. 2006) ("[T]he ALJ may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence.") (*citing McCain v. Dir., Office of Workers' Comp. Programs*, 58 F. App'x 184, 193 (6th Cir. 2003)). Dr. Mandel was the only physician who commented on Plaintiff's diagnosis and treatment of fibromyalgia and his opinions are supported by medical evidence. Therefore, it is unclear on what basis the ALJ concluded that Plaintiff's routine treatment was somehow inconsistent with Dr. Mandel's findings. It was improper for ALJ Dodson to reject the doctor's findings based upon the ALJ's

lay opinion of the types of treatment an individual with restrictions as those indicated by Dr. Mandel, should receive.

In response, Defendant submits that there are other legitimate reasons to support the ALJ's scrutiny of Dr. Mandel's findings, and that the undersigned should uphold the ALJ's decision because substantial evidence supports the ALJ's conclusion despite his failure to identify these additional reasons. But, *Wilson* states otherwise. *Wilson* announced that reversal is required when the agency fails to follow its own procedures, even when the Commissioner's decision is otherwise supported by the record. 378 F.3d at 544-46. ALJ Dodson's failure to articulate legitimate reasons for discounting Dr. Mandel's opinion is a violation of the treating source rule and necessitates remand. Although *Wilson* noted that *de minimis* violations of this rule may constitute as harmless, 378 F.3d at 547, ALJ Dodson's actions were substantially more than the insignificant errors described by the court in *Wilson*.

This is not a case where Dr. Mandel's opinions were so patently deficient so as to make them incredible or where the ALJ met the goal of the treating source rule without strictly adhering to the terms of 20 C.F.R § 404.1527(d)(2). Neither is this a case where the ALJ's treatment of the opinion was irrelevant. In *Wilson*, the Court explained that there might be times when the ALJ has made findings consistent with the doctor's opinion, therefore making it irrelevant whether the ALJ supplied reasoning for his treatment of the physician's opinions. *Id*. Contrary to Plaintiff's suggestion, a portion of the ALJ's RFC determination is consistent with Dr. Mandel's opinions. Nevertheless, the Commissioner admits that the ALJ did not accept all of Dr. Mandel's findings. Notably, Dr. Mandel opined that Patterson could not stand or walk for two hours, turn his head right or left more than rarely or look up or down more than occasionally. The doctor also noted that Plaintiff would miss work about three days each month due to his

impairments. These findings tend to indicate that Plaintiff would be incapable of performing even sedentary work. As such, ALJ Dodson's RFC finding cannot be viewed as consistent with the whole of Dr. Mandel's opinion. Consequently, the ALJ's failure to provide adequate reasons for rejecting these findings cannot be deemed harmless error. Remand is required in order for ALJ Dodson to re-examine Dr. Mandel's opinion, and to articulate adequate reasons for the weight assigned to his opinion should the ALJ find that it is not deserving of controlling weight.

### 2. Plaintiff's Credibility

On remand, the ALJ should also re-assess Patterson's credibility. It is the ALJ's responsibility to make decisions regarding the credibility of witnesses. "An ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x at 806 (*citing Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)). Notwithstanding this standard, the ALJ must clearly state his reasons for rejecting a claimant's complaints as incredible. *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994). For many claimants, it is not his/her condition per se which is debilitating, but rather the symptoms which are associated with the condition. 20 C.F.R. §§ 404.1529, 416.929. This is usually the case with claimants alleging disability due to fibromyalgia.

Under circumstances where a claimant's symptoms, and not the underlying impairment, form the basis of the claimant's request for disability benefits, a two-part test is used to evaluate the claimant's allegations of pain. 20 C.F.R. §§ 416.929(a), 404.1529(a); *Rogers*, 486 F.3d at 247; *Felisky*, 35 F.3d at 1038-39. First, the ALJ must determine whether there is "an underlying medically determinable physical impairment that could reasonably be expected to produce the

claimant's symptoms." *Rogers*, 486 F.3d at 247 (*citing* 20 C.F.R. § 416.929(a)). If the first test is satisfied, the ALJ must evaluate "the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities." *Id.* Social Security Ruling 96-7p lists the factors relevant to the ALJ's determination at this step. These factors include: the individual's daily activities, the frequency and intensity of the individual's pain or other symptoms, any medication the individual takes or has taken to alleviate the pain or other symptoms, and treatment, other than medication, the individual has received for relief of the pain or other symptoms. SSR 96-7p, 1996 WL 374186, at *2-3; *Felisky*, 35 F.3d at 1038.

A claimant's subjective statements regarding his/her pain play a significant role in the diagnosis and treatment of fibromyalgia. *Rogers*, 486 F.3d at 248. Because of the elusive nature of this impairment, the ALJ's responsibility to evaluate and provide justification for discounting the claimant's credibility is particularly important in these types of cases. *Id.* (*citing Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519) (6th Cir. 1985)). The ALJ's written opinion "must contain specific reasons for the finding on [the claimant's] credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186, at *2.

ALJ Dodson's opinion recited the applicable rules and regulations governing his duty to assess Patterson's credibility, yet failed to comport with the stated requirements, particularly the second step of the pain analysis. Though ALJ Dodson concluded that Patterson's fibromyalgia could reasonably be expected to cause the pain alleged, the ALJ did not believe that Patterson's statements regarding the intensity, persistence, or limiting effects of his symptoms were fully credible. However, the ALJ's written opinion is devoid of any analysis of the factors set forth in

12

Social Security Ruling 96-7p or *Felisky*, relevant to assessing the credibility of Patterson's statements regarding the severity of his condition. ALJ Dodson also neglected to offer any real explanation of why he found Patterson's statements to be incredible. The only statement the ALJ offered in explanation of his finding was that Plaintiff's statements were "not totally credible to the extent they [we]re inconsistent with the [ALJ's] residual functional capacity assessment." (Tr. 16). But, this statement alone is not sufficient to convey *why* ALJ Dodson did not view Patterson's credibility favorably.

Instead of performing an analysis of how the factors announced *Felisky* and Social Security Ruling 97-6p impacted his judgment of Patterson's credibility, the ALJ summarized the pertinent medical evidence and Plaintiff's testimony during the hearing. *See* (Tr. 15-18). But this restatement of the record does not apprise the Court of what effect this evidence had upon the ALJ's view of the veracity of Patterson's statements. In other words, the ALJ's recital of Plaintiff's professed daily activities does not, in and of itself, explain why or how these daily activities detracted from Patterson's credibility. Nor can the Court decipher which of Plaintiff's statement(s) ALJ Dodson found to be incredible. In light of the absence of any express analysis of the applicable factors used to assess a claimant's subjective complaints of pain, the undersigned cannot assume that the ALJ considered these factors simply because he referenced certain facts within the record. This is not to suggest that the ALJ should have specifically addressed how he considered each and every factor; however, ALJ Dodson was required to supply at least some explanation to make clear the grounds upon which he judged Patterson's credibility.

The Commissioner insinuates that the reasons ALJ Dodson supplied for discounting Dr. Mandel's opinion applied equally to the ALJ's treatment of Plaintiff's credibility. Essentially,

Defendant is asking the undersigned to attribute the ALJ's assessment of Dr. Mandel's opinions, as encompassing the ALJ's judgment of Plaintiff's credibility also. Even assuming that the Court accepted this rationalization – which it does not – such reasoning would not carry the day in the instant case because the Court has already determined that the ALJ did not provide a sufficient basis for discrediting Dr. Mandel's findings. Defendant's argument is also problematic because the ALJ did not indicate that his criticisms of Dr. Mandel's opinion were also intended to reflect criticisms of Patterson's statements. Thus, Defendants argument amounts to an improper *post hoc rationalization*. See S.E.C. v. Chenery Corp., 332 U.S. 194, 195, 67 S.Ct. 1575, 1577 (1947) ("[A] reviewing court . . . must judge the propriety of [an administrative] action solely by the grounds invoked by the agency.").

Lastly, Defendant points out that the ALJ did provide some commentary regarding how he assessed Patterson's RFC. On the second to last page of his opinion, ALJ Dodson stated that his RFC finding was supported by the fact that Plaintiff admitted that his medications were helpful when he took them, caused no side effects, and that Patterson only tested positive for 18 out of the 18 tender points for fibromyalgia after having been off of his medication for two months. (Tr. 18). However, the ALJ made these comments in direct reference to his RFC determination, not his view of Plaintiff's credibility. He also listed improper reasons in support of his RFC determination, such as the fact that Plaintiff's physical examinations showed normal results. Though an ALJ's assessment of the claimant's RFC is inherently intertwined with the ALJ's assessment of the claimant's credibility, the Court is not convinced that the ALJ's comments here were intended represent his assessment of Plaintiff's credibility, as they appear to reflect the ALJ's attempt to offer further justification of his RFC determination, rather than commentary on his assessment of Plaintiff's credibility. Because remand is warranted on other

grounds, the ALJ will have a second opportunity to examine Patterson's credibility and to better articulate reasons for crediting or rejecting Patterson's statements.

### 3. Plaintiff's Non-Exertional Limitations

At the final stage of the sequential analysis, ALJ Dodson utilized the Medical-Vocational Guidelines (the "grid"), 20 C.F.R. Part 404, Subpt. P, App. 2 § 200.00(e), to determine whether Plaintiff could perform work existing in significant numbers in the national economy. (Tr. 18-19). Application of the grid at step five is proper when a claimant suffers from exertional impairments. *Abbott*, 905 F.2d at 926. But, when the claimant suffers from both exertional and non-exertional impairments, and the non-exertional limitations significantly restrict the range of work available to the claimant, "rote application of the grid is inappropriate." *Id.*; *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 424 (6th Cir. 2008). Instead, in this circumstance, the grid may only be used as a "framework" to provide guidance to the ALJ. *Abbott*, 905 F.2d at 926.

Patterson challenges ALJ Dodson's failure to include any non-exertional limitations in his RFC determination, and argues that had the ALJ properly included such, application of the grid would have been precluded. Plaintiff's argument is premised on his assertion that a person with fibromyalgia will invariably suffer from non-exertional limitations, namely the symptom of pain which is the hallmark of fibromyalgia. *See* (Pl.'s Br. at 14-16; Pl.'s Reply Br. at 3). Thus, in actuality, the issue presented is whether the ALJ erred by neglecting to include non-exertional limitations in his RFC determination.

Plaintiff's correlation goes too far. While pain is inherently linked to fibromyalgia, it is not necessarily true that this pain will always cause non-exertional limitations. A non-exertional limitation is an impairment which "significantly diminishes" a claimant's capacity to work, "but does not manifest itself as a limitation on strength". *Abbott*, 905 F.2d at 926. Examples include

manipulative restrictions, heightened sensitivity to environmental contaminants and restrictions on stooping, bending or balancing. *Id*; *see* SSR 83-14, 1983 WL 31254, at *1-2. Plaintiff did not provide the Court with any legal support for its contention that pain itself is a non-exertional limitation or that fibromyalgia consistently causes individuals to suffer from non-exertional limitations. Nor is the undersigned persuaded that either of these contentions is always true as the severity and limiting effects of fibromyalgia greatly vary. Moreover, the ALJ's RFC finding need only incorporate limitations which the ALJ accepted as credible. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993). Nevertheless, ALJ Dodson will now have another opportunity to consider whether Patterson suffers from any non-exertional impairments. If the ALJ so finds, his step five finding should not rely solely upon application of the grid if Patterson's non-exertional impairments would significantly reduce the range of available work. *See Jordan*, 548 F.3d at 424.

## VI. DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is not supported by substantial evidence. Accordingly, the Court VACATES the decision of the Commissioner and REMANDS the case to the Social Security Administration.

IT IS SO ORDERED.

s/ Kenneth S. McHargh
Kenneth S. McHargh
United States Magistrate Judge

Date: March 26, 2012.